(No. 3102— )

John Allen, Claimant, *vs.* State of Illinois, Respondent.

*Opinion filed January 11, 1939.*

Glenn Ratcliff and Lachlan Crissey, for claimant.

John E. Cassidy, Attorney General; Glenn A. Trevor, Assistant Attorney General, for respondent.

MR. JUSTICE LINSCOTT delivered the opinion of the court:

John Allen made application for adjustment of claim for compensation under the Workmen's Compensation Act for an injury alleged to have occurred while he was working for the Department of Public Works and Buildings in the Division of Highways of the State of Illinois, on the 5th day of July, 1935, as a laborer for the State Highway Maintenance Patrolman in the District of Peoria about two miles west of Havana, Illinois, on State Highway Route No. 78.

From the record before us, it appears that the parties to this litigation were under and subject to the provisions of the Workmen's Compensation Act; that the accident to Allen arose out of and in the course of his employment; that notice of the accident was made in accordance with the Act; that medical and surgical aid had been furnished to Allen by the State and that he has been paid as to the result of his injuries by the State, at the rate of $9.60 per week up to the 20th day of February, 1936; all told he received the sum of $316.80. The record shows that he was a married man but had no children under sixteen years of age.

At the time of the accident, claimant was coupling a two-wheel concrete mixer to a truck. In some manner his foot slipped and he fell, injuring his groin and hips. The evidence shows that this accident occurred about 4:00 on the 5th day of July, 1935; that claimant worked until about 7:00 that evening and also the next day. Having been advised by his foreman to see a doctor, he consulted Dr. R. T. Ewan on July 8, 1935. Dr. Ewan's examination disclosed a large external ring in the inguinal canal and from his examination, Dr. Ewan diagnosed the case at the time as beginning hernia. He also examined the claimant a number of times after that, but at later examinations, he was unable to find any hernia. At the time of the hearing, he had not examined the claimant for some eight or nine months. The hearing was on the 12th day of August, 1937.

The claimant requests compensation from the 20th day of February, 1936, to the 1st day of April, 1937, at the rate of $9.60 per week, making 58 weeks at the rate of $9.60 per week, or a total of $556.80, and also claims a permanent partial disability and requests compensation to be paid to him at the rate of $6.00 per week for a period of eight years, amounting to the further sum of $2,496.00, making a total of $3,052.80.

The question for the court to determine is the nature and extent of claimant's injuries, whether he continued to suffer from temporary total disability from the date of the last compensation until April 7, 1937 and whether he has suffered and will continue to suffer permanent partial disability from the date of the accident for a period of eight years.

Claimant had been a farmer and a day-laborer. A number of former co-employees testified. One or two of them testified that he had a hernia. They were not physicians and had never examined him. All agreed that he was not as good a worker as he had been prior to the accident; that he had been employed for a part of the time on WPA work and had loaded long poles on a wagon or other conveyances for the purpose of sawing them up for himself. Manifestly, under the evidence, he was not totally disabled.

The burden is upon the claimant to prove by a greater weight or preponderance of the evidence, his actual condition, and loss of wages, if any, before this court can make an award.

Claimant contends that he suffers great pain when he does any heavy work. Dr. Ewan, who had been his attending physician for many months, testified to the effect that it was pretty hard to say whether there was anything to cause him pain. Then again he said: "I can see how it would be possible it would cause him some pain to perform heavy labor." Dr. Ewan testified that he examined claimant at different times, but didn't examine him very much after the first nine months; that he was always sensitive, but was not as sensitive at the end of the nine months as at the beginning. Dr. Ewan also testified, "That it was hard to say whether his condition was permanent." On cross-examination this doctor said that the large opening in the external inguinal ring may have been congenital; that he did not know whether the large external ring had always been there or not; that it might have been a large vein that was probably congenital; that his later examinations disclosed that it was not a hernia; that he had given him some medicine for pain; that at the time he advised him to be careful about heavy labor; that the symptoms of pain were purely suggestive; that he did not know at the time that claimant was engaged in cutting and sawing wood; that later, claimant had told him about doing some chopping, getting some wood up. This doctor also testified that he found no

evidence of tearing or ditches of abdominal wall; that all he found was on the first examination; that the sensitiveness of pain diminished as time went on.

Dr. Harold A. Vonachen and Dr. Harry J. Ireland, both of Peoria, testified and their testimony corroborates a report that they made to the department on August 11, 1936 and on February 19, 1936. Dr. Vonachen, whose principal business is industrial surgery stated that he examined the claimant at the request of the State Department of Public Works and Buildings, Divisions of Highways on August 11, 1936. On cross-examination by claimant's counsel, he testified that he had had many cases similar to claimant's case in industrial work; that he found a slight enlargement of the right inguinal ring, and without the presence of any bulging or impulse through the ring it doesn't signify anything particularly; that he found enlarged external rings in many normal individuals; that his diagnosis showed a right epididymitis; that epididymis is the anatomical term for the junction of the spermatic cord with the testicle, and that was slightly enlarged at the time of his examination, and that would not indicate anything unusual. He stated in his opinion that claimant had been able to work for sometime and thought he should be returning to work, and that opinion was based upon his examination. On cross examination he was asked this question:

Q. But it is true that he could have suffered from pain sufficient to keep him from working and still you couldn't detect it?

He made the following answer:

A. I think if there is sufficient pain there to keep him from work, there has to be some reason for the pain and that ordinarily should be manifested by some objective finding.

He was further asked:

Q. Isn't it true that he could be suffering from pain while exerting himself and still not suffer while in a dormant condition?

A. You mean suffer pain or any pain?

Q. Couldn't he be suffering pain while he worked and still not while he was in your office?

A. A question like that is difficult to answer. In my opinion there was nothing there that would justify sufficient pain to keep him from working.

Q. That isn't what I asked you. Is it possible that he could be suffering from pain when he was under heavy exertion and still not be suffering when he was in your office and there would be nothing to show that he was suffering from pain?

A. I suppose anything is possible but it isn't very probable in this particular case.

Dr. Ireland of Peoria testified and on cross-examination said that his diagnosis at the time of the examination was a previous sacro-iliac strain and a strain of the inguinal muscles and fascia. He had recommended that a scrotal support should be applied and that the man's activities should be increased; that the patient should not necessarily refrain from any heavy lifting or hard labor, but it is usually advisable for a time after the initial injury that there should not be excessive lifting. He also testified that it was possible to have pain without any objective symptoms.

There is no conflict between the testimony of the various doctors.

In the consideration of testimony of medical experts, much credibility cannot be placed thereon when the testimony delves into the realm of conjecture. All an expert can do is to give an opinion based upon a reasonable degree of medical certainty, and laymen cannot be permitted to go this far. There is direct positive evidence in the record, being the evidence of Dr. Vonachen that claimant was able to work and had been able to do so for a long time prior to the date of his report, which was August 11, 1936. Dr. Ewan did not express any opinion contrary to these views.

There is nothing in the record that would justify an award in this case. Therefore, the petition will be denied.